Law Office of James McGee, PLC
Steven Parnell Weaver
CA Bar #243000
325 W. Hospitality Lane, Suite 212
San Bernardino CA 92408
steven@mcgeeplc.com
909-571-5599

UNITED STATES CENTRAL DISTRICT COURT

STATE OF CALIFORNIA

| | |
|---|---|
| Timothy Baltierra and Robert Perez, | ) Case No.: |
| | ) COMPLAINT FOR DAMAGES |
| Plaintiffs | ) - **42 U.S.C. Section 1983 and 1988:** |
| vs. | ) State Created Danger; |
| | ) Failure to Protect; |
| County of San Bernardino, Sheriff | ) Failure to Intervene; |
| Custody Specialist Scott | ) - Monell:Custom/Practice/Policy; |
| Jewsbury, Deputy J. Velasquez | ) Failure to Train; Ratification |
| #I19591, Deputy L. Edwards | ) - **State Common Law:** |
| #I1575, Deputy C. Padilla | ) Negligence; |
| #H8263, Deputy T. Phillips | ) Intentional/Negligent Infliction |
| #D4677, | ) of Emotional Distress |
| | ) |
| Defendants | DEMAND FOR JURY TRIAL |

## NATURE OF ACTION

1. This is an action for money damages brought pursuant to 42 U.S.C.

   Sections 1983 and 1988, the Eighth and the Fourteenth Amendments of

   the United States Constitution, and the California State Constitution

1

against the County of San Bernardino (DCSB), Sheriff Custody

Specialist Scott Jewsbury (DSJ). Sheriff Deputy J. Velasquez (DJV),

Sheriff Deputy L. Edwards (DLE), Sheriff Deputy C. Padilla (DCP) and

Sheriff Deputy T. Phillips (DTP).  DCSB, DSJ, DJV, DLE, DCP and DTP

collectively together will be referred to as DEFENDANTS.  Individual

Defendants will be referred to as DEPUTY DEFENDANTS.


## PRELIMINARY STATEMENTS

2. Plaintiffs Timothy Baltierra (PTB) and Robert Perez (PRP) collectively

referred to as PLAINTIFFS, were pretrial inmates at the West Valley

detention facility in the County of San Bernardino when substantially

injured due to the DEFENDANTS' failure to provide safety and by

deliberately putting them in harm's way or failing to stop harm that they

reasonably knew was going to occur.  DEFENDANTS have sole control

over the opening and shutting of security doors that facilitate and

contribute to repeated attacks by inmates against inmates.  This

custom/policy/practice includes opening and/or not securing security

doors causing insecurity amongst the inmates, including the

PLAINTIFFS, and that results in an inmate being physically harmed.

These practices run contrary to the duty of care a jailer owes to the prisoner and the special relationship that exists between them.

3.  This is a civil action seeking damages against the DEFENDANTS for committing acts under color of law and depriving the PLAINTIFFS of rights secured by the Constitution and laws of the United States (42 U.S.C. § 1983).  The rights deprived are 1.) due process right to be free from violence from other inmates and 2.) constitutional right to be free from a government employee affirmatively placing PLAINTIFFS in a position of actual, particularized danger.  DEFENDANTS together acted with a deliberate indifference to a known and obvious danger.

4.  PLAINTIFFS bring this action against all the DEFENDANTS under the Eighth and Fourteenth Amendments of the United States Constitution and the Civil Rights Act of 1871, as codified at 42 U.S.C. § 1983, for injuries suffered due to the DEFENDANTS' substantial and deliberate indifference to their health and safety.

5.  PLAINTIFFS bring this action against the DEFENDANTS, for monetary damages to redress all their individual injuries resulting from DEFENDANTS' negligence, deliberate indifference, failure to protect and purposeful acts.

6.   PLAINTIFFS state claims against the DEFENDANTS for breach of duties imposed upon them by the Constitution of the State of California and for duties imposed upon them by the common law.

7.  Due to the number of current pending lawsuits against the DCSB involving harm to inmates by other inmates and the failure to protect, which has continuing unabated, DEFENDANTS have constructive and actual notice of the longstanding, pervasive, well-documented custom, habit, and practice of allowing inmate-on-inmate violence, facilitating it, and showing a deliberate indifference toward a substantial risk of harm to the PLAINTIFFS.  The following similar cases are examples of DCSB's custom and unwritten policy facilitating inmate on inmate violence in its jails and provide notice of the problems:

   a.  Solis v. West Valley 5:15-1005 – filed 5/21/2015 – inmate alleged request made for protective custody, request denied, and inmate placed in general population whereupon he was beat up by 3 inmates on 2 separate occasions and later put into protective custody.  Pro se dismissed for procedural reasons.

   b. Thomas v. County of San Bernardino 5:15-cv-02323 – filed 11/11/2015 - 18-year-old 100-pound inmate who was developmentally and physically disabled was placed in a 2-man

4

cell at West Valley and killed by a 22-year-old 200-pound man with

known violent propensities and prior assaults with inmates and

staff while in custody.

c. Clay v. San Bernardino – No. EDCV 19-00032-AG(DFM) –

originally filed 6/2/2016 - security door opened allowing Clay to be

attacked and stabbed by other inmates while Sheriff Deputies

watched and failed to intervene.

d. Thomas v. County of San Bernardino 5:19-cv-00167 – filed

1/28/2019 – Deputies purposefully put an inmate who plaintiff was

testifying against in a cell with him, knowing he would be attacked,

whereby he was in fact sliced with a weapon in his abdomen area,

broke his wrist, busted his lip and deputies failed to stop the attack

and watched.  The District Attorney had even warned the Sheriff's

department to not allow the two inmates, "any room together,

holding cell, county bus, transportation to and from court, for safety

and security of the plaintiff." Sheriff Department deemed the event

an accident during the grievance process.

e. McGhee vs. San Bernardino County 5:19-cv-00910-VBF-JC, - filed

5/15/2019 - inmate attacked by weapon received stiches and

bandages and alleged a long-standing practice of allowing

prisoners to roam freely and to attack other prisoners.  Pro se case

dismissed on procedural grounds.

f. <u>Bookman v. San Bernardino</u>, EDCV 19-cv-1012 JGB (KKx) – filed

6/3/2019 - inmate stabbed by another prisoner while in protective

custody and alleged pattern and practice of letting prisoners roam

freely unsupervised despite information regarding threats.  Guards

were warned about possible attack by Plaintiff.  Pro se dismissed

on procedural grounds because no <u>Monell</u> claim filed although

Court found enough pled for failure to protect.

g. <u>Martinez v. County of San Bernardino</u> 5:19-cv-2057 – filed

10/25/2019 - inmates allege that deputies encouraged inmates to

fight in an involuntary fight club and deputies would intimidate and

scare inmates into fighting.  These deputies were later charged

and convicted.  Settled.

h. <u>Covarrubias v. SCS Trujillo</u>, EDCV 20-1456-JFW (JPR) – filed

7/1/2020 - inmate at West Valley placed by Sheriff Deputies on

three separate occasions into a room with rival enemies or

Deputies opened his cell door whereafter the inmate was injured.

Pro se dismissed on legal sufficiency grounds.

i.  <u>Estate of Michael McCormack v. County of San Bernardino</u>, 5:21-cv-00148- filed 1/25/2021 - wrongly housed mentally ill inmate at West Valley killed by violent inmate with previous known violent in-custody disputes.  Monell dropped as not adequately pled.

j.  <u>Manago v. Martinez</u> – No. 5:21-CV-01939 MCS(KES) – filed 11/10/2021 - Manago alleges mixing of different classifications of inmates contrary to jail policy to encourage inmate on inmate violence.

k.  <u>Townsend v. Deputies</u> No. EDCU 22-0525-VBF (JPR) – filed 3/24/2022 - security door opened allowing Townsend to be attacked by inmates while in protective custody.

l.  <u>Pedro Hernandez vs. San Bernardino County</u>, 5:22-cv-01101-JGB-SP – filed 7/1/2022 - inmate at West Valley was injured with broken vertebrae during a second race riot that was preventable as the Sheriffs didn't separate the races after the first race riot.

m. <u>Mateo D. v. County of San Bernardino</u>, 5:22-cv-1357 – filed 8/1/22 - wrongly housed severely mentally ill inmate at West Valley killed when placed in a 2-man cell with a violent inmate with prior history of violence in custody.  Dismissed with leave to amend Monell failings.

n. <u>Villa v. County of San Bernardino</u>- 5:22-cv-01538-DSF-JC – filed 8/31/2022- Plaintiffs Villa and Morales were stabbed by an inmate and the DCSB failed to intervene though they could have, failed to protect and they created this danger by facilitating and allowing these actions.

o. <u>Alvarado v</u>. County of San Bernardino - 2:23-cv-02641 – filed 4/7/2023. - whereby protected inmates were stabbed and attacked by general population inmates because the DCSB facilitated access and physical and emotional harm happened thereafter.  In these incidents this DCSB and employees failed to intervene and that case is associated with this case per Order of the Court.

8. Hector Gaona in the <u>Alvarado</u> case gave prior actual notice of threats to his safety when he was previously attacked while in protected custody by inmates that should have been segregated from him and by filing a grievance thereafter. He was attacked a second time by inmates who should not have had access to him.

9. Each Government-official Defendant, through the official's own and individual actions, has violated the Constitution.

8

10. The alleged constitutional deprivations are the product of a policy or custom of San Bernardino County of putting prisoners in purposeful, preventable danger without any consequences.

11. DEFENDANTS are aware of the need to keep certain members of races separated due to gang affiliations and otherwise.

12. There is a permanent and well-settled practice by San Bernardino County in not protecting inmates which gave rise to the alleged constitutional violations. DEFENDANTS have a habit, custom and thereby policy of housing, placing, or combining inmates, that should be separated and segregated from each other, together in the same cell, area or allowing unauthorized access. The death or great bodily injury of one by the other happens thereafter and this custom presents a substantial known risk of serious harm. DEFENDANTS consistently fail to take reasonable measures to abate this harm, which allows inmate on inmate violence to occur again and again and again.

13. DCSB's officials, management and employees were negligent or intentional, by, without limiting other acts and behaviors: failing to follow its established safety procedures; failing to protect PLAINTIFFS from harm from other inmates; failing to provide necessary and appropriate security measures and maintenance in keeping security doors closed to

prevent access for the safety, welfare and protection of PLAINTIFFS; failing to monitor the cameras in the control booth, ignoring them on purpose, and/or watching and failing to act.

14.   The DEFENDANTS violated the PLAINTIFFS' constitutional rights and were negligent or intentional by, without limiting other acts and behaviors; breach of its duty of care to PLAINTIFFS by: (1) not monitoring high security inmates and not following established protocols for doing such; (2) failing to properly screen and segregate inmates known to have acted violently in the past; (3) failing to provide sufficient gate maintenance at the unit where the PLAINTIFFS are housed; (4) failing to follow its established safety procedures in keeping racially segregated inmates away from each other; (5) failing to provide necessary and appropriate security measures in stopping inmate on inmate attacks; (6) failing to implement a classification system and corresponding housing plan for inmates at the West Valley detention center to keep inmates separated and, (7) failing to provide necessary and appropriate security measures necessary for the safety, welfare and protection of the PLAINTIFFS.

15.  PLAINTIFFS suffered serious and severe physical and emotional injuries and deprivation of their constitutional rights because of the DEFENDANTS' actions.

16. PLAINTIFFS are entitled to reasonable costs and attorney's fees under 42 U.S.C. 1988 and other applicable California codes and laws as to each claim or charge.

17. Under San Bernardino County policy for door security 6.505.00, inmates are unable to leave one secured area to enter another without a staff member opening a door.  Security doors shall remain closed unless authorized personnel are passing through.  Staff shall take precautions to ensure all persons are clear for movement prior to opening or closing doors and gates.  Staff shall not open any door until the person requesting entry or exit has been identified.

18. San Bernardino County policy for door security 6.505.00 was not adhered to, resulting in injury to the PLAINTIFFS.

19. Under San Bernardino County policy for inmate grievances 12.230.00 an administrative or criminal investigation is not completed if there is misconduct by a staff Member of the jail if a Facility Commander or designee is notified of such an event unless for an allegation of sexual abuse and harassment.

11

20. San Bernardino County policy 12.230.00 shows that the Defendant shows substantial indifference to the known and obvious danger of facilitating inmate on inmate violence by not criminally or administratively investigating such occurrences.

21. Purposefully allowing racially segregated inmates access to each other is not an action that an officer could reasonably believe was lawful for him to be deliberately indifferent to the risk of harm to the PLAINTIFFS by exposing him to attack by another inmate.

22. The harm the PLAINTIFFS were in danger of suffering was objectively serious; The harm was in fact serious resulting in stab wounds, broken bones, loss of vision, surgery, medical treatment, and severe emotional distress.

23. California Government Code Section 815.2(a) provides that a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

24. The DEPUTY DEFENDANTS were acting within the scope of their employment when they facilitated and/or allowed the PLAINTIFFS to be attacked by other inmates.

12

## **JURISDICTION AND VENUE**

25. This Court has jurisdiction over the federal civil rights claim pursuant to 28 U.S.C. §§ 1331 and 1343 under the federal question doctrine. This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(a).

26. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

27. This action is filed under the Eighth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983, under California Law and under common law, to redress injuries suffered by the PLAINTIFFS at the hands of DEFENDANTS.

28. DEFENDANTS are responsible for the opening, closing, security and maintenance of the gates and units in question.

29. PLAINTIFFS exhausted the formal grievance process individually and notices of a claim were presented by each PLAINTIFF and rejected thereafter by DEFENDANTS.  The claim stated the time, place, cause, nature, and description of matter causing any injuries.

30. At all relevant times, PLAINTIFFS were inmates at the West Valley detention center, operated by San Bernardino County in the County of San Bernardino.

13

## **PARTIES**

31.   Defendant San Bernardino County is a California municipal corporation that acts through individuals to establish its policies and that is capable of being sued under California Law.

32.   The San Bernardino County Sheriff Department (Department) is an entity under the jurisdiction of San Bernardino County.

33.   At all times mentioned herein and at all other relevant times, DSJ was employed by the Department acting within the course and scope of his employment as a DCSB employee at the time of the incident and is sued herein in both his official and personal capacities.

34.   At all times mentioned herein and at all other relevant times, DJV was employed by the Department acting within the course and scope of his employment as a DCSB employee at the time of the incident and is sued herein in both his official and personal capacities.

35.   At all times mentioned herein and at all other relevant times, DLE was employed by the Department acting within the course and scope of his employment as a DCSB employee at the time of the incident and is sued herein in both his official and personal capacities.

36.   At all times mentioned herein and at all other relevant times, DCP was employed by the Department acting within the course and scope of

his employment as a DCSB employee at the time of the incident and is sued herein in both his official and personal capacities.

37.   At all times mentioned herein and at all other relevant times, DTP was employed by the Department acting within the course and scope of his employment as a DCSB employee at the time of the incident and is sued herein in both his official and personal capacities.

38.   PTB is an individual, and at all times mentioned herein was a citizen of the United States of America and a resident of the County of San Bernardino while incarcerated at San Bernardino County West Valley Detention Center located at 9500 Etiwanda Ave. Rancho Cucamonga CA 91739.

39.   PRP is an individual, and at all times mentioned herein was a citizen of the United States of America and a resident of the County of San Bernardino County while a resident at West Valley Detention Center located at 9500 Etiwanda Ave. Rancho Cucamonga CA 91739.


**STATEMENT OF FACTS GIVING RISE TO PTB's CAUSES OF ACTION**

40.   The Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth herein and further states that:

15

41.　At the time of the incident, PTB was incarcerated at San Bernardino County West Valley jail located at 9500 Etiwanda Ave. Rancho Cucamonga CA 91739.

42.　On or about January 21, 2022, PTB was in Unit 5-F in Cell 12.

43.　DEFENDANTS owed PTB a duty under the law to protect him from harm as his jailer.

44.　 Unit 5 is considered the highest security unit of West Valley Detention Center and the SBCSD jail system.

45.　The primary classification of the inmates in Unit 5 are Administrative Housing 1, (AH-1) inmates.

46.　Under Sheriff County Department manual section 9.900 - Inmate Classifications, AH-1 inmates require special handling and movement.

47.　Section 9.900 states that prior to letting specialty housing inmates out of their cells, safety staff shall secure the area by locking all inmates in that section in their cells and checking the area, including inmate showers, to ensure there are no other inmates present in the area.  This procedure is to be repeated each time such inmates are allowed outside of their cell or when returned to their cell.

48.　When such AH-1 inmates are returned to their cell, safety staff shall physically check to ensure that their cell door is secured and locked.

49.   AH-1 and AH-2 inmate may be unrestrained when placed in a holding

cell with only their cellmate.

50.   On January 21, 2022, DSJ was responsible for 4 security doors in

Unit 5 being open at one time of different races of inmates, causing PTB

to be attacked by approximately four such inmates.

51.   On January 21, 2022, DTP was the supervising Sheriff's Deputy that

approved all police reports concerning this matter and who did not

formally write-up DSJ, DJV, DLE or DCP for their malfeasance, ratifying

their behavior.

52.   Prior to the attack and prior to entering the cell areas, inmate Tony

Bratton was provoked to attack an inmate of a different race by unknown

Sheriff Deputies.

53.   Mr. Bratton has said that he was told by several deputies about racial

tensions and they told him that he needed to be "on point," prompting

him to act.

54.   Tony Bratton attacked because he was provided an opportunity to

act.

55.   Mr. Bratton says on the day of the attack, he was returning from the

dentist and his housing unit and attacked because he saw an

opportunity due to the security doors being opened and based on what

he was told by deputies.  He says that he knew the doors should not have been open.

56.    After Tony Bratton initiated beating and attacking PTB, other inmates soon after joined the attack.

57.    PTB was stabbed in the back during this attack and twice in the left buttocks as well as punched and kicked repeatedly by the attacking inmates.

58.    PRP was a witness to this attack and attempted to defend the attack but was himself attacked and seriously injured, including a loss of vision and a broken nose.

59.    PTB was stabbed, attacked, and beaten because a door was purposely or negligently not secured by DSJ.  This door separated classes and segments of inmates for their protection.

60.    Inmate Bratton was not transported correctly from the Dentist back to the cell unit with the appropriate caution or security and the willful violation of the Department policy was a contributing factor in the attack.

61.    The attack was captured on video and still photos from the video are attached and incorporated here in. The video and still photos show DJV, DLE and DCP leave the control booth and then purposefully face other unit segments, E and G, while the fight starts in F.

18

62.    Stills 1 and 2





63.   Inmates in Segment B can clearly either hear or see what is going on, as they start to try to see what is happening, while DJV, DLE and DCP purposefully ignore Segment F.

64.   Still 3:



65.   Still 4:



66.   Still 5



67.   Still 6



68.   Still 7



69.   Still 8



70.   Still 9



71.   DJV, DLE and DCP appear to be purposefully preoccupied as the fight initiates, giving the fight a head start, and then they casually return to the control booth and return back with less-lethal weapons.

/

/

/

/

/

/

/

72.   Still 10



73.   Still 11



74.    Still 12



75.    Still 13



76.    Still 14



77.    Still 15



78.   Still 16



79.   Still 17



80.     DJV, DLE and DCP all write police reports that are in contradiction to the video of the incident, as they all say that they were made aware of the fight from DSJ but in reality, per the video, they were all in the vicinity and all ignored the fight until the radio call was made.

81.     PTB now has substantial back pain and issues with his mobility.

82.     PTB initially denied medical attention at the time of the incident, but he has been having increasingly elevated back problems and pain.

83.     PTB's medical chart notes a wound to his lower back that is small, circular, and healed as of 4/22/22.

84.     As of August 16, 2022, his back still locks up while laying or sitting, resulting in extreme pain. PTB has extreme difficulty moving or getting up.

85.     PTB has not received any meaningful medical care or treatment despite complain of pain because "he did not tell them when it happened."

86.     PTB has been in constant fear of his security since this attack and has experienced increased anxiety and paranoia.

87.     COUNTS 1-5 concern specifically PTB against the DEPUTY DEFENDANTS.

## COUNT 1 –Violation of 14th Amendment – Due Process – State-Created Danger

88.   The Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth herein and further states that:

89.   DEPUTY DEFENDANTS breached its duty of care to Plaintiff through "deliberate indifference" toward a substantial risk to the Plaintiff's health or safety by opening or not closing security doors, which allowed an inmate to stab and attack Plaintiff without timely intervention.  These acts were a known and obvious danger of not providing the proper maintenance to control the opening or closing of a security door in a high security unit;

90.   DEPUTY DEFENDANTS committed an affirmative act by opening or choosing not to close the security doors of the unit, by not securing it and/or by not attempting to stop the attack or timely intervene when they had the opportunity, should and could have done so and knew the attack was going to happen and/or was happening;

91.   By DEPUTY DEFENDANTS opening the door, or allowing the door to be opened, or by failing to close the appropriates doors, placed Plaintiff in a position of an actual, particularized danger by creating and exposing the Plaintiff to a danger that he would not have otherwise faced;

92.     DEPUTY DEFENDANTS acted with deliberate indifference to a known and obvious danger by opening the door, or by allowing it to be opened without their control, and then by failing to take any action to timely protect Plaintiffs from attacking inmates; DEPUTY DEFENDANTS control the opening and closing of the security doors and DEPUTY DEFENDANTS were late to intervene to stop the attack;

93.     DEPUTY DEFENDANTS' failure to take appropriate action and their purposeful affirmative action in opening the door, or not controlling the door, created the actual, particularized dangers which caused injury to the Plaintiff that was foreseeable and in fact resulted in physical and emotional harm to the Plaintiff;

94.     The DEFENDANTS' common practice of placing inmates needlessly in detrimental situations caused the Plaintiff to be attacked and thereby caused his emotional and physical injuries and the DEPUTY DEFENDANTS are thereby liable for compensatory damages under 42 U.S.C. Section 1983;

95.     Plaintiff further claim all of Plaintiffs' attorney's fees and costs incurred and to be incurred in Plaintiff's presenting, maintaining, and prosecuting this action under 42 U.S.C, 1988;

96.   The action of the Defendants are/were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities, and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

## COUNT 2 – Violation of 14th Amendment – Pretrial Detainee's Claim of Failure to Protect

97.   The Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth herein and further states that:

98.   DEPUTY DEFENDANTS deprived the Plaintiff of particular rights under the Fourteenth Amendment by a purposeful failure to provide necessary and appropriate security measures in keeping security doors secure and failing to attempt to stop an attack by an inmate.

99.   The DEPUTY DEFENDANTS made an intentional decision regarding the conditions under which the Plaintiff was confined by opening the door or not controlling the opening of a door, of an inmate who thereafter attacked Plaintiffs and by ignoring the fight in general;

100.  The opening of a security door housing a high security inmate of a different race put the Plaintiffs at substantial risk of suffering serious physical and emotional harm, which in fact did occur;

101.  The DEPUTY DEFENDANTS did not take any reasonable available measures to abate or reduce that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved in not maintaining control of the security doors and in ignoring attacks—making the consequences of the defendant's conduct obvious; and

102.  By not taking and measures to abate or reduce the risk, the DEPUTY DEFENDANTS caused the Plaintiff's injuries.

103.  The injury to the Plaintiff was caused by a failure of the DEPUTY DEFENDANTS to provide necessary and appropriate security for the safety, welfare, and protection of Plaintiff in violation of the laws of the Constitution and procedures governing the operation of the DEPUTY DEFENDANTS by allowing security doors to be unsecured, not segregating inmates sufficiently and/or allowing high security inmates to roam unsecured causing the injury to Plaintiff.

104.  The Plaintiff re-alleges and incorporates paragraphs 94-96 regarding Plaintiff's request for damages and attorneys' fees as if set forth herein this Count.

**COUNT 3 – Violation of 14th Amendment – Failure to Intervene**

105.   The Plaintiffs re-alleges and incorporates the foregoing paragraphs as if set forth herein and further states that:

106.   The DEPUTY DEFENDANTS observed, heard, or had reason to know that Plaintiffs were about to be involved and was involved in a physical altercation with other inmates as they were in the control booth filled with video monitors when the fight started and left the booth but stayed in earshot of the altercation and waited to act;

107.   The DEPUTY DEFENDANTS had a reasonable opportunity to intervene to prevent attack from occurring or continuing but decided to ignore the events until a radio call was made well after the fight started;

108.   In failing to intervene, the DEPUTY DEFENDANTS were deliberately indifferent to substantial risk of harm to Plaintiff; and

109.   The DEPUTY DEFENDANTS' deliberate indifference to substantial risk of harm was risk that caused the Plaintiffs' harm in being beaten, stabbed, and attacked.

110.   The Plaintiff re-alleges and incorporates paragraphs 94-96 regarding Plaintiff's request for damages and attorneys' fees as if set forth herein this Count.

## **COUNT 4 – Negligence**

111.  The Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth herein and further states that:

112.  DEFENDANTS breached its duty of care to the Plaintiff by allowing an inmate under the care and custody of the San Bernardino Sheriff's Department to obtain a lethal weapon and by failing to protect the Plaitiff by failing to timely intervene.

113.  DEFENDANTS breached its duty of care to the Plaintiffs by failing to follow its established safety procedures resulting in Plaintiffs being stabbed and/or attacked.

114.  Due to the actions of a San Bernardino Sheriff's Deputy, doors were not properly maintained, operated and/or secured;

115.  DEFENDANTS' officials, management and employees violated plaintiff's constitutional rights and were negligent by, without limiting other acts and behaviors: breach of its duty of care to Plaintiffs by negligently: (1) allowing prisoners access to weapons; (2) failing properly to screen and segregate inmates known to have acted violently in the past; (3) failing to follow its established safety procedures; (4) failing to provide necessary and appropriate security measures by negligently or purposefully leaving security doors unsecured; (5) failing to develop and implement a classification system and corresponding

housing plan for inmates at the detention facility; (6) failing to either use the cameras or simply turn to see to see an obvious attack that was about to happen or purposefully choosing to not stop the attack.

116.   Due to the doors being unsecured, PTB was stabbed by a lethal weapon and sustained preventable physical and emotional damage.

117.   The Plaintiffs re-alleges and incorporates paragraphs 94-96 regarding Plaintiff's request for damages and attorneys' fees as if set forth herein this Count.

## COUNT 5- Emotional Distress

118.   The Plaintiffs re-alleges and incorporates the foregoing paragraphs as if set forth herein and further states that:

119.   DEFENDANTS engaged in outrageous conduct with an intent to or a reckless disregard of the probability of causing Plaintiffs to suffer emotional distress by facilitating an inmate-on-inmate attack by opening a security door allowing segregated inmates access to attack Plaintiffs.

120.   As a direct, proximate, and foreseeable result, Plaintiffs suffered severe emotional distress from physical and emotional trauma induced by DEFENDANTS and the outrageous conduct was the cause of the emotional distress suffered by the Plaintiffs.

121.  The actions of the DEFENDANTS that caused the injury did so either purposefully or negligently.

122.  The Plaintiffs re-alleges and incorporates paragraphs 94-96 regarding Plaintiff's request for damages and attorneys' fees as if set forth herein this Count.

## STATEMENT OF FACTS GIVING RISE TO THE PRP CAUSES OF ACTION

123.  The Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth herein, specifically incorporating all of the facts under PTB's Causes of Action and the still photos of the incident and further states that:

124.  At the time of the incident, PRP was incarcerated at San Bernardino County West Valley jail located at 9500 Etiwanda Ave. Rancho Cucamonga CA 91739 in the maximum-security unit.

125.  On or about January 21, 2022, PRP was in his Unit when he heard PTB being attacked and he attempted to aid in his defense, as being the same race, if he did not, he could be attacked.

126.  Different races and tiers do not have all of their doors opened at the same time for the safety and security of the inmates and staff.

36

127.  PTB and PRP were attacked by other inmates of a different race because the inmates were not properly secured and the DEFENDANTS did nothing to intervene and in fact gave the attackers a head start.

128.  PRP was brutally attacked by these unsecured inmates and is now blind in one eye, he received a broken nose and he has decreasing vision in his other barely working eye.

129.  Sheriff Deputies were purposefully delayed in their response to the attack.

130.  PRP was rushed to Arrowhead hospital after the event.

131.  PRP has made numerous trips to medical specialists regarding the condition of his eyes and his nose since this incident.

132.  Medical plastic surgery specialist had to retrieve cartilage from his right ear to fix his broken nose due to deviation.

133.  PRP has vision issues and suffers a broken nose because cell doors were purposely or negligently not secured and deputies failed to intervene, stop, or avoid the attack.

134.  PRP has been going to Pacific Eye Institute in Rancho Cucamonga to receive injections for his right eye due to the incident.

135.  He has been advised that he has swelling, blood and hemorrhaging behind his right eye due to the incident.

37

136.  PRP had surgery in July of 2022 on his head and brain due to his headaches caused by this incident.

137.  The involved doors separated classes and segments of inmates for their protection and safety.

138.  PRP received corrective surgery for his broken nose roughly 8 months after the incident.

139.  This incident was captured on video.

140.  This incident involved the attack of PTB.

141.  COUNTS 6-10 concern specifically PRP against DEPUTY DEFENDANTS.


## COUNT 6- Violation of 14th Amendment – Due Process – State-Created Danger

142.  The Plaintiffs re-alleges and incorporates the foregoing paragraphs as if set forth herein and more specifically paragraphs 88-93.

143.  The Plaintiffs re-alleges and incorporates paragraphs 94-96 regarding Plaintiffs' request for damages and attorneys' fees as if set forth herein this Count.

## COUNT 7 – Violation of 14th Amendment – Pretrial Detainee's Claim of Failure to Protect

144.  The Plaintiffs re-alleges and incorporates the foregoing paragraphs as if set forth herein and more specifically paragraphs 97-103.

145.  The Plaintiffs re-alleges and incorporates paragraphs 94-96 regarding Plaintiffs' request for damages and attorneys' fees as if set forth herein this Count.

## COUNT 8 – Violation of 14th Amendment – Failure to Intervene

146.  The Plaintiffs re-alleges and incorporates the foregoing paragraphs as if set forth herein and more specifically paragraphs 105-109.

147.  The Plaintiffs re-alleges and incorporates paragraphs 94-96 regarding Plaintiffs' request for damages and attorneys' fees as if set forth herein this Count.

## COUNT 9 - Negligence

148.  The Plaintiffs re-alleges and incorporates the foregoing paragraphs as if set forth herein and more specifically paragraphs 111-116.

149.  The Plaintiffs re-alleges and incorporates paragraphs 94-96 regarding

Plaintiffs' request for damages and attorneys' fees as if set forth herein

this Count.


## COUNT 10 – Emotional Distress

150.  The Plaintiffs re-alleges and incorporates the foregoing paragraphs

as if set forth herein and more specifically paragraphs 118-121.

151.  The Plaintiffs re-alleges and incorporates paragraphs 94-96 regarding

Plaintiffs' request for damages and attorneys' fees as if set forth herein

this Count.


## COUNT 11 – 1983 MONELL: MUNICIPALITY LIABILITY FOR CUSTOM/PRACTICE/POLICY; FAILURE TO TRAIN; RATIFICATION

### (ALL PLAINTIFFS vs. DCSB)

152.  PLAINTIFFS re-allege and incorporates the foregoing paragraphs as

if set forth herein and further states that:

153.  PLAINTIFFS were deprived of constitutional rights – namely a.) due

process right to be free from violence from other inmates and b.)

constitutional right to be free from government employees affirmatively

placing PLAINTIFFS in a position of actual, particularized danger and/or

not doing anything to stop inmate-on-inmate violence when being in a position to stop it or failing to intervene; DEFENDANTS deprived PLAINTIFFS of these constitutional rights in this matter.

154.  DCSB and its employees have a custom of allowing, facilitating, encouraging, and failing to defend against inmate-on-inmate violence as alleged in this Complaint and Paragraphs 7, subsections a-o and 8; Each case cited involves placing inmates in a position of peril and/or Defendants failing to protect inmates from other inmates and/or being the in-fact cause of inmate-on-inmate violence.  PLAINTIFFS allege DEFENDANTS allowed, facilitated, encouraged and/or failed to defend or intervene against the attacks against the PLAINTIFFS in this matter;

155.  DCSB's policy/custom regarding inmate-on-inmate violence amounts to deliberate indifference to the plaintiff's constitutional right by turning a blind eye to inmate-on-inmate violence, facilitating it, encouraging it, watching it and not stopping it from happening or slowly reacting to it on a regular basis as alleged in this Complaint and Paragraphs 7, subsections a-n and 8; DEFENDANTS showed deliberate indifference to the PLAINTIFFS constitutional rights by facilitating the attacks in this matter as alleged;

156.  DCSB's custom/policy regarding inmate-on-inmate violence, as

alleged in this Complaint and Paragraphs 7, subsections a-o and 8, was

the moving force behind the constitutional violation because none of the

PLAINTIFFS would have been injured or attacked but for the DCSB's

continuing actions; PLAINTIFFS were injured and attacked because of

the actions of the DEFENDANTS in allowing prisoners to free roam

unsecured and consistently allowing access for inmates to attack other

inmates;

157.  DCSB's current custom/policy regarding inmate-on-inmate violence is

untenable, unconstitutional, and illegal and represents the opposite of

the duty imposed on municipalities to reasonably protect those in its

custody.

158.  DEPUTY DEFENDANTS acted under color of state law;

159.  DCSB's custom/policy regarding inmate-on-inmate violence as

alleged in this Complaint and Paragraphs 7, subsections a-o and 8 have

been so consistent and widespread that it should be considered a

permanent and well-settled policy because the DCSB and their

employees keep repeating the pled actions and will not stop without

intervention.

160.  DCSB's custom/practice/policy of pitting inmates against each other and failing to protect inmates is of a sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy.

161.  DCSB has consistently failed to train its deputies on stopping inmate violence before it happens and when they know or should know it is going to occur. The training policies of the DCSB's were not adequate to prevent violations of law by its employees as they have a duty to protect inmates from violence nor was there adequate training to handle the usual and recurring situations with which they must deal.

162.  DCSB was deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of the law by its employees in protecting inmates;

163.  DCSB was deliberately indifferent to the known or obvious consequences of its failure to train its employees adequately;

164.  DCSB's failure to prevent violations of law by its employees in not protecting inmates from violence and the failure to provide adequate training caused the deprivation of the plaintiff's rights by the DEPUTY DEFENDANTS.

165.   DCSB's failure to prevent law violations and to train played a substantial part in bringing about or causing the injury or damage to the PLAINTIFFS.

166.   DCSB has ratified the behavior of its wrongful acting deputy employees, including the DEPUTY DEFENDANTS.  By failing to reprimand deputies responsible for ensuring the inmates don't attack each other when they fail to do so, DCSB ratified the behavior.  In this matter, no deputy was disciplined.

167.   The DCSB has ratified the behavior of its DEPUTY DEFENDANTS by not adhering to policy designed to stop or mitigate, inmate on inmate violence, that its employees are supposed to follow;

168.   Plaintiffs are informed and believes, and thereupon alleges the details of this incident and the other instances alluded to, have been revealed to the authorized policymakers of the DCSB based on it being represented by counsel in every alleged instance.  Notwithstanding this knowledge, the authorized policymakers of the DCSB have made a deliberate choice to endorse the actions of its agents and employees in most of the alleged actions and in this one.  By so doing, the authorized policymakers of the DCSB have shown affirmative agreement with the

44

individual DEPUTY DEFENDANTS' actions and have ratified their unconstitutional acts.

169.   DCSB and its final policy makers have ratified the behavior of its employee deputies because they knew or should have known of the fact that the alleged acts, omissions, decisions, practices, customs, policies, both formal and informal, were carried out by its agents and employees and have not taken steps to prevent this course of conduct, nor to make redress to the Plaintiffs.

170.   We are unaware of any discipline of the DEPUTY DEFENDANTS for the incidents herein.

171.   These policies, customs, practices, failure to train, and ratification were the moving force and the reason behind the DEPUTY DEFENDANTS violations in Plaintiffs' constitutional rights.

172.   Considering the duties assigned to the DEPUTY DEFENDANTS, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the DCSB can reasonably be said to have been deliberately indifferent to the constitutional rights of the PLAINTIFFS.

173.   In addition to the series of similar events, the conduct alleged within this complaint falls within the narrow range of circumstances that makes

a particular showing of obviousness. **Allowing high security inmates access to different race inmates is against department policy. Purposefully ignoring the start of the attack, after allowing access, shows deliberate indifference that on its own could substitute for a pattern of violations.**

174. The Plaintiffs re-alleges and incorporates paragraphs 94-96 regarding Plaintiffs' request for damages and attorneys' fees as if set forth herein this Count.

175. Attorney's Fees are requested on All Counts as the Prevailing Party.

//

WHEREFORE, the PLAINTIFFS demands judgment against each and every Defendant individually and jointly as DEFENDANTS and prays for relief as follows as to each above Count or Charge:

1.) Compensatory damages in an amount according to proof, which is fair, just, and reasonable.

2.) Punitive and exemplary damages under federal and California law, in an amount according to proof and in an amount which is fair, just, and reasonable against each individual Defendant as allowable by law.

3.) All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C 1983 and 1988; California Code of Civil

Procedure 1021.5 and as otherwise may be allowed by California and/or Federal law; and

4.) For such other and further relief as the Court deems just and proper.

Dated: May 23, 2023

_____

Steven Parnell Weaver

Attorney for PLAINTIFFS

DEMAND FOR JURY TRIAL

The Plaintiffs hereby demands a jury trial on each and every charge or count.

Dated: May 23, 2023

_____

Steven Parnell Weaver

Attorney for PLAINTIFFS